**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SUSAN FRENCH, as PARENT and NATURAL GUARDIAN of Z.F., a minor,

Plaintiff,

v.

ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, and MOJANG AB, and JOHN DOES 1-50,

Defendants.

Case No. 2:25-cv-05306-MRP

Judge: Hon. Mia Roberts Perez

**DEFENDANT ROBLOX CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PLAINTIFF TO ARBITRATION AND STAY PROCEEDINGS**

## I. INTRODUCTION

Plaintiff Z.F., a minor ("Plaintiff"), via their parent Susan French ("French"), filed this lawsuit for harm allegedly caused by Plaintiff's use of user-created games on Roblox's platform. But these claims do not belong in this court. French (or Z.F.'s other parent or guardian) ***repeatedly*** agreed to the Roblox Terms of Use (the "Terms"), under which they promised to arbitrate any dispute with Roblox concerning Plaintiff's use of its platform.

***First***, since at least since January 2022, French (or Plaintiff's other parent or guardian) (collectively, "Responsible Adult") was required to agree to the Terms on Plaintiff's behalf, and Plaintiff's Responsible Adult reaffirmed those Terms at least five times since August 2023.

***Second***, Plaintiff and their Responsible Adult purchased "Robux" (Roblox's in-game currency) two times, with both transactions requiring a distinct and separate assent by Plaintiff's Responsible Adult to the Terms.

Plaintiff and their Responsible Adult accepted the Terms repeatedly. Plaintiff is also bound

by, and cannot disaffirm, this valid arbitration agreement under the third-party beneficiary doctrine. And even if Plaintiff contends that they did not consent to the Terms in any of the many instances identified, Plaintiff cannot avoid enforcement of the arbitration agreement under the doctrine of equitable estoppel. Consequently, the mandatory arbitration agreement within the Terms is applicable to Plaintiff's claims, and the Federal Arbitration Act ("FAA") requires enforcing the Terms. *See* 9 U.S.C. §§ 2–4; *see also Roblox Corp. v. WowWee Grp. Ltd.*, No. 22-cv-04476-SI, 2023 WL 4108191, at *2 (N.D. Cal. June 20, 2023) (granting Roblox's motion to compel arbitration pursuant to the mandatory arbitration agreement in Roblox's Terms and the FAA). The Court should compel Plaintiff to arbitrate their claims and stay this case.

## II. FACTUAL BACKGROUND

### A. Roblox's Services

Roblox operates an online platform (the "Roblox Platform") where users can create virtual games (referred to as "experiences"), connect with other users to enjoy those user-created experiences, and acquire or use virtual apparel and other content that they and other users create. Declaration of Ronita Jit ("Jit Decl.") ¶ 4.

Roblox has 151.5 million daily active users[1] and is available to play on gaming consoles, computers, tablets, and cellular devices. Individuals who wish to use the Roblox Platform must create a Roblox account. *Id*. In order to create a Roblox account, users must agree to the Roblox Terms of Use ("Terms"). *Id*. ¶ 10.

Roblox is free to access, but users can also purchase a virtual in-game currency called "Robux." *Id*. ¶ 5. Robux can be used to acquire virtual items and gain access to virtual experiences. *Id.*

[1] As of Q3 2025. Jit Decl. ¶ 4.

### B. Roblox Users Are Bound By The Terms

#### 1. Plaintiff's Responsible Adult Agreed to Roblox's Terms Repeatedly

In order to use the Roblox platform, users must create an account and agree to Roblox's Terms. *Id*. ¶ 10. Roblox periodically updates its Terms. *Id.* Roblox users are notified of material updates to the Terms via a pop-up notice displayed when the user accesses the Roblox Platform. *Id.*¶¶10,14. The notice includes a bolded hyperlink to the updated Terms and requires users to click to accept the new Terms to continue using the Roblox Platform. *Id.* The pop-up notice also instructs minors to show the notice to their parent or guardian. *Id.* ¶ 13.

As just one example, Roblox notified users of its August 2023 Terms via both on-platform pop-up notices requiring affirmative acceptance and via an on-platform message sent directly to every user's "Messages" page within their personal accounts. *Id.* ¶¶ 11-13. The Terms update message was delivered one month prior to becoming effective on users' personal "Messages" pages. *Id.* ¶ 12. This message stated that "[b]eginning on August 1, 2023, you – or if you are a minor, your parent/guardian – will need to agree to the updated Terms of Use in order to continue using Roblox" and "[i]f you do not agree, you can close your Roblox account(s) before these updates go into effect." *Id.* ¶ 13.

**Updates to Roblox Terms of Use**

Hello!
Today we are sharing planned updates to our Terms of Use and Privacy Policy. You can review the updated Terms of Use here and the Privacy Policy here. Beginning on August 1, 2023, you - or if you are a minor, your parent/guardian - will need to agree to the updated Terms of Use in order to continue using Roblox.

Please take some time to review these important legal documents, and if you are a minor, share them with your parent/guardian. If you do not agree, you can close your Roblox account(s) before these updates go into effect.

Thank you,

The Roblox Team

Roblox informs its users in this manner each time a material update to its Terms occurs and requires users to accept the updated Terms to continue using the Roblox Platform. *Id.* ¶ 14. They likewise state that minors must show the pop-up message "to your parent or guardian." *Id*. These pop-up notices were sent to Roblox users multiple times during relevant years, namely in August 2023, February 2024, June 2024, November 2024, and June 2025. *Id*.




Following this and other notices, the Account continued to be accessed and actively used, including for multiple on-platform purchases of Robux, binding Plaintiff to the Terms. *Id.* ¶ 15. Indeed, the Account remains open as of the date of this submission and was used as recently as December 30, 2025 (*id*.), notably *after* Plaintiff filed the Complaint purporting to disaffirm Roblox's Terms. *See* Compl. ¶ 290.

**2. <u>Plaintiff's Responsible Adult Agreed to Roblox's Terms by Purchasing Robux</u>**

Plaintiff's Responsible Adult, on behalf of Plaintiff, made two Robux purchases on the Roblox Platform through the Xbox Store on April 8, 2024, and August 1, 2025, both of which required agreement to Roblox's Terms. *Id.* ¶ 18, Ex. 1. *Id.* ¶¶ 17-19; *see also, e.g.*, Compl. ¶ 340 (alleging that "French would not have purchased or allowed Z.F. to use or continue to use" Roblox

if she had known about the alleged harms). Before making Robux purchases on the Roblox platform, Plaintiff's Responsible Adult was required to agree to the Terms. *Id.* ¶¶ 17-19. Indeed, when conducting a Robux purchase on August 1, 2025, through the Xbox Store, Plaintiff's Responsible Adult would have encountered the following screen. At the bottom of the screen, the following disclosure appears: "By purchasing Robux, you agree to our Terms of Use and Privacy Policy, including the arbitration clause…" *Id.* ¶ 19.



### C. <u>The Terms Contain a Binding Arbitration Agreement</u>

The Introduction to Roblox's Terms, effective August 1, 2023,[2] alerts users: "PLEASE READ THE ROBLOX TERMS CAREFULLY BEFORE BEGINNING TO USE THE SERVICES, AS THEY SET FORTH A LEGALLY BINDING AGREEMENT BETWEEN YOU AND ROBLOX." *Id.*, Ex. 3 at 1. The Introduction also prominently informs users, again, to the presence of an arbitration clause in bolded, capitalized letters:

> For U.S. Users, Roblox's Arbitration Agreement (Section 11), which outlines how disputes between you and Roblox will be resolved. Specifically, these Roblox Terms contain **A BINDING, INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER. THIS MEANS THAT YOU GIVE UP THE RIGHT TO BRING AN ACTION IN COURT, INDIVIDUALLY OR AS PART OF A CLASS ACTION.**

*Id*. Section 11 of the Terms (the "Arbitration Agreement") includes the following provisions:

**Notice**: The Arbitration Agreement's opening paragraphs inform users in bolded, capitalized letters that they are agreeing to arbitrate any dispute with Roblox:

> **YOU ACKNOWLEDGE AND AGREE THAT YOU ARE GIVING UP THE RIGHT TO FILE A LAWSUIT IN COURT BEFORE A JUDGE OR JURY, INCLUDING IN A CLASS ACTION, FOR ANY DISPUTES SUBJECT TO THE ARBITRATION PROVISION BELOW.**

*Id*. at 19 (emphasis in original).

**Expansive Scope**: The Arbitration Agreement applies to "any dispute, claim, or controversy [the user] ha[s] with Roblox arising under or relating in any way to the Roblox Terms or the Services ('Dispute')." *Id.* The Roblox "Services," are, in turn, defined broadly to include "the Roblox website …. and its related platform …. and various other features and services, including websites,

[2] Roblox's Terms contained materially identical arbitration provisions at all times since updated on August 1, 2023. *See e.g.*, Jit Decl., Ex. 3 at 19.

applications, forums, content, functionality, products, and services [.]" *Id*. at 1.[3]

**Delegation Provision**: The Arbitration Agreement delegates exclusive authority to the arbitrator:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms, including, but not limited to, any claim that all or any part of the Roblox Terms is void or voidable; however, in the event of a Dispute about which particular version of the Roblox Terms you agreed to, a court will decide that specific question prior to the commencement of the arbitration. This Arbitration Agreement is intended to be broadly interpreted and will survive termination of the Roblox Terms.

*Id*. at 25.

**Individual Arbitration**: The substantive portion of the Arbitration Agreement opens with another notice to users about its importance and then specifies that they are agreeing to individual arbitration and waiving their right to class actions:

**Please read this section carefully; it's important.**

> **1.** ARBITRATION AGREEGMENT AND CLASS ACTION WAIVER. EXCEPT AS OTHERWISE PROVIDED IN THE **ROBLOX TERMS, USER** AND **ROBLOX** AGREE THAT ANY DISPUTE THAT CANNOT BE RESOLVED THROUGH MIDR WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AS SET FORTH HEREIN, RATHER THAN IN COURT. USER AND ROBLOX THEREBY AGREE TO WAIVE ANY RIGHT TO A JURY TRIAL AND AGREE THAT **USER** AND **ROBLOX** MAY BRING CLAIMS AGAINST EACH OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR CLASS ARBITRATION.

[3] **Right to Opt Out**: The Arbitration Agreement also provides that users have the right to opt out of the Arbitration Agreement. Jit Decl., Ex. 3 at 25. Roblox has no record showing that Plaintiff or French ever opted out of the arbitration provision within the specified timeframe. *Id.* ¶ 16.

*Id*. at 22.

## III. ARGUMENT

### A. The Arbitration Agreement Is Enforceable Against Plaintiff

The FAA controls the disposition of this motion. Roblox's Terms make clear that they are governed by the FAA. Jit Decl., Ex. 3 at 22-23. The FAA reflects federal policy that "courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (citation omitted). It "leaves no place for the exercise of discretion[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Instead, "courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id*. The court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp*., 401 F.3d 529, 532 (3d Cir. 2005). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983).

To determine whether the parties agreed to arbitrate, the courts apply "ordinary state-law principles that govern the formation of contracts." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009). "[B]ut in doing so, [courts] must give due regard to the federal policy favoring arbitration." *Adams v. Mt. Lebanon Operations, LLC*, 276 A.3d 1203, 1206 (2022).

Plaintiff agreed to Roblox's Terms through straightforward methods of notice and assent, which bound them to the Terms' arbitration provisions. Pennsylvania law provides that online agreements—including clickwrap agreements—are enforceable where "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the

consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Wiggins v. Lab'y Corp. of Am. Holdings*, No. 24-0648, 2024 WL 4476646, at *7 (E.D. Pa. Oct. 11, 2024) (citations omitted). The criteria for whether arbitration provision is sufficiently conspicuous includes text's size, color, contrast, and location. *See Fellerman v. PECO Energy Co.*, 159 A.3d 22, 27 (2017) (agreement contained conspicuous statement of arbitration provision at the very top, written in bold, capital letters and surrounded by a text box advising purchasers to read the agreement carefully).

The Terms here represent an enforceable "clickwrap agreement" because users must click a button to accept the terms before using Roblox's Platform or engaging in transactions for Robux. *See Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007) ("A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction."). Plaintiff, who is alleged to be at least 16 years old, Compl. ¶ 13, would have seen and known about the arbitration provisions that the Terms disclosed so conspicuously. *See supra* § II.B.[4] Courts enforce clickwrap agreements such as the Terms where, as here, users must click to accept after having notice of and an opportunity to review them. *See, e.g., Happy v. Marlette Funding, LLC*, 744 F. Supp. 3d 403, 414 (W.D. Pa. 2024) (Clickwrap agreement enforceable where plaintiff clicked "Accept and Submit" button and check box stating that they read terms hyperlinked in green); *Hine v. LendingClub Corp.*, No. 2:22-CV-00362-CRE, 2023 WL 8113234, at *7 (W.D. Pa. Nov. 22, 2023) (same where plaintiff clicked "Confirm" button and check box stating that they

[4] Roblox's records indicate that Plaintiff or their Responsible Adult entered their date of birth as July 5, 2003. Jit Decl. ¶ 9. If this is Z.F.'s date of birth, then Z.F. agreed to the Terms as an adult and this can end the Court's inquiry. If this is the date of birth of Z.F.'s Responsible Adult, then this serves as further evidence that Z.F.'s Responsible Adult agreed to the Terms on Z.F.'s behalf, and they too would have noticed the conspicuously disclosed arbitration provisions.

read hyperlinked terms); *Pricharda v. Checkr, Inc.*, No. 5:22-CV-3180, 2022 WL 16749033, at *4 (E.D. Pa. Nov. 7, 2022) (plaintiff "was reasonably on notice of the Terms of Service when he assented to the clickwrap agreement, which alerted him to the presence of the Arbitration Clause in bold and all capital lettering at the very beginning of the Agreement").

### B. <u>Plaintiff Is Bound By Their Responsible Adult's Agreement To Arbitrate</u>

Although Plaintiff's acceptance of the Terms is sufficient to show their assent to arbitration, their Responsible Adult's agreement to the Terms on dozens of occasions serves as an independently sufficient basis to compel arbitration.

#### 1. <u>Plaintiff's Responsible Adult Agreed to the Terms *Repeatedly*</u>

Plaintiff's Responsible Adult demonstrated her acceptance of the Terms through various actions. ***First***, Roblox's records indicate that Plaintiff continues to access and use the Account, created on May 13, 2021, as of December 30, 2025. Jit Decl. ¶¶ 6, 9. Plaintiff's Responsible Adult agreed to the Terms each of the five times the Terms were materially updated since August 2023. *Id.* ¶ 13. Each time, because Plaintiff was a minor, Roblox's Terms prohibited Plaintiff from continuing to use Roblox's Platform without Plaintiff's Responsible Adult first agreeing to the updated Terms. *Id.* ¶¶ 10-13; *see also Doe v. Samsung Elecs. Am., Inc.*, No. CV 23-3985, 2025 WL 1970245, at *3 (E.D. Pa. July 16, 2025) (Where plaintiff "continued to use" services after terms were updated that contained arbitration agreement, plaintiff "thus assented" to that agreement).

***Second***, Plaintiff's Responsible Adult agreed to the Terms each time she made Robux purchases on Plaintiff's behalf. Jit Decl. ¶¶ 17-19.

#### 2. <u>Plaintiff's Responsible Adult's Agreement is Enforceable Against Plaintiff</u>

When Plaintiff used Roblox's platform and purchased Robux as a minor, their parent or

guardian had to agree to the Terms on their behalf. *See supra* §§ II.B.1, II.B.2.

Importantly, where "a party's claims arise out of the underlying contract to which he was an intended third-party beneficiary, he is bound by the contract's terms, including an arbitration provision." *Doeff v. Transatlantic Reinsurance Co.*, No. 07-2110, 2007 WL 4373041, at *2 (E.D. Pa. Dec. 13, 2007) (citing *E.I. Dupont De Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir.2001)); *see also Angelilli v. Activision Blizzard, Inc.*, No. 23-cv-16566, 2025 WL 524276, at *12, *19 (N.D. Ill. Feb. 18, 2025) (minor nonsignatory was third party beneficiary to parent's arbitration agreements with Rockstar, Nintendo, Epic, and Sony in a case concerning similar allegations to this case). Here, Plaintiff is a third-party beneficiary of the Terms. The Terms and Plaintiff's Responsible Adult's acceptance under these circumstances were intended to, and did, allow Plaintiff's use of the Roblox Platform.

It is true that the Pennsylvania Supreme Court in *Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995 (Pa. Sept. 25, 2025), recently held, in a challenge to an arbitration requirement, that "parents are without authority to bind a minor child to an agreement to arbitrate." *Id.* at 1015. However, that decision is inapposite because the court's holding was rooted in "a series of [Pennsylvania state] rules of civil procedure that govern actions where a minor is a party," *id.* at 1010, and Pennsylvania's rules of civil procedure do not apply in federal court. *See Cohen v. Johnson*, 8 F.R.D. 37, 38 (M.D. Pa. 1948) ("since the effective date of the Federal Rules of Civil Procedure, federal courts are no longer controlled by state practice"). Instead, Pennsylvania's substantive law governing the formation of contracts applies, and it holds that third-party beneficiaries like the Plaintiff here are bound to arbitration agreements. *Doeff*, 2007 WL 4373041, at *2.

*Santiago* is not applicable here for another reason. By preventing parents from agreeing to

arbitrate their children's claims, *Santiago* violates the FAA by failing to "place arbitration agreements on an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). Rules applicable only to arbitration "or that derive their meaning from the fact that an agreement to arbitrate is at issue" are improper. *Id*. Courts "may not ... invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Dr.'s Assocs, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Accordingly, courts disregard state cases that contravene the FAA. *See, e.g., Dieffenbach v. Upgrade, Inc.*, No. 4:23CV1427, 2025 WL 1239328, at *8 (M.D. Pa. Apr. 29, 2025) (giving "little weight" to Pennsylvania Superior Court decision as "contrary to the FAA and United States Supreme Court precedent"); *Litman v. Cellco P'ship*, 655 F.3d 225, 232 (3d Cir. 2011) ("endors[ing] the District Court's decision to reject" New Jersey Supreme Court ruling as "preempted by the FAA").

The *Santiago* court declined to enforce the arbitration agreement because "submitting a claim to arbitration is … the selection of a forum devoid of judicial protection of the minor's interests." 343 A.3d at 1014. It held that because Pennsylvania's "Rules of Civil Procedure are constructed to recognize [a minor's legal] disability," the "court at all times has the obligation to monitor the conduct of the litigation to protect the child's best interests," and "[a]rbitration strips the minor of these protections." *Id*. But the FAA and the extensive case law interpreting it recognize the opposite – that arbitration is simply an alternative forum, and certainly not one "devoid of judicial protection." Indeed, Justice Brobson's dissent criticized the majority's "unsupported belief that, in matters involving a minor, arbitration is invariably a less favorable forum," recognizing that "[a]rbitration does nothing to affect the substantive rights of the minor child and is a forum heavily favored as a matter of public policy." *Id*. at 1016. The Pennsylvania Superior Court's categorical rule barring parents from entering into arbitration agreements is,

respectfully, wholly inconsistent with the "congressional declaration of a liberal federal policy favoring arbitration agreements" reflected in the FAA. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

**3. <u>Plaintiff Cannot Avoid Arbitration Through Disaffirmance</u>**

Plaintiff may contend that he disaffirmed the Terms by filing the Complaint. *See* Compl. ¶ 290. But Plaintiff's purported disaffirmance is an issue delegated to the arbitrator. It also fails on the merits.

The issue of disaffirmation is an issue for the arbitrator to decide. The Terms delegate issues of arbitrability, including the "interpretation, applicability, enforceability or formation of [the Roblox Terms]," to the arbitrator. *See supra* § II.C; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (explaining that parties can delegate "gateway" questions of arbitrability to an arbitrator under the FAA). This delegation provision applies to affirmative defenses to contract enforcement that challenge the Terms' enforceability and validity. *See Highmark Inc. v. Hosp. Serv. Ass'n of Ne. Penn.*, 785 A.2d 93, 95 (2001) ("defenses to arbitration are properly before the arbitrator rather than this court"). Courts around the country regularly compel arbitration of disaffirmance disputes on precisely that ground, applying delegation clauses substantively identical to the one here. *See, e.g.*, *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837-38 (7th Cir. 2022) ("the [disaffirmation] defense goes to the arbitrator") (citations omitted); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883-84 (6th Cir. 2021) (same); *N.A. v. Nintendo of Am. Inc.*, No. 23-cv-02424-DMR, 2023 WL 8587628, at *5 (N.D. Cal. Dec. 11, 2023) (compelling arbitration of disaffirmance dispute because parties "agreed" through delegation clause "to arbitrate issues of enforceability, which includes [the] disaffirmation defense"); *S.T.G. ex rel. Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1211 (S.D. Cal. 2024) (compelling arbitration of "disaffirmance defense" because it was subject to delegation clause covering "questions" of

"validity, enforceability, or scope"); *A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, No. C20-1694 TSZ, 2021 WL 1840835, at *2 (W.D. Wash. Apr. 29, 2021) (compelling arbitration of disaffirmance dispute because it challenges whether the contract remains "valid," an issue that the parties' "delegation provision" reserved for the "arbitrator"). The Court should rule the same way here.

And even if the Court does address this issue, Plaintiff cannot disaffirm the valid agreement between Roblox and Plaintiff's Responsible Adult because, as explained, Plaintiff is a third-party beneficiary of the Terms. *See supra* § III.B.2. Pennsylvania courts hold that arbitration agreements are enforceable against nonsignatory parties where the contract contemplates conferring a benefit on another. *See Doeff*, 2007 WL 4373041, at *2. Courts around the country agree. *See, e.g.*, *Hojnowski v. Vans Skate Park*, 901 A.2d 381, 392–93 (N.J. 2006) (upholding parent's ability "to bind a minor child to arbitrate future tort claims"); *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 404 (Fla. 2005) (parents who allow children to engage in certain activities may elect arbitration on the child's behalf for claims arising from those activities); *Cross v. Carnes*, 724 N.E.2d 828, 831, 836 (Ohio Ct. App. 1998) (parent has "authority to bring and conduct a lawsuit on behalf of the[ir] child, … [and] has the same authority to choose arbitration as the litigation forum."). The reason for this is simple: a contract between adults for which a minor receives benefits as a third party is not a contract with a minor. As such, a minor's ability to disaffirm does not apply. A parent understands the nature and force of the contract into which she is entering on the minor's behalf. Plaintiff cannot now disaffirm that to which their Responsible Adult agreed.

Moreover, Plaintiff continues to use their Roblox account, including as recently as December 30, 2025, Jit Decl. ¶ 8, notably ***after*** Plaintiff filed the Complaint purporting to disaffirm the Terms. A minor cannot continue to avail himself of the benefits of the contract which he

purports to have disaffirmed. *See Mabe v. OptumRx*, No. 3:17-CV-01102, 2024 WL 3498353, at *16 (M.D. Pa. July 22, 2024) (a "party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate"); *Posternock v. Sirius XM Radio Inc.*, No. 23-2680 (MAS) (RLS), 2025 WL 1114695, at *5 (D.N.J. Apr. 15, 2025) ("Plaintiff's continued use of Sirius XM and repeated modification of her subscription support the Court's finding that Plaintiff understood and intended to be bound by the Customer Agreement."); *R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex, 2019 WL 6792801 (C.D. Cal. July 30, 2019) ("[B]ecause Plaintiff continued to play [the video game] until […] after the filing the Complaint [sic] – he continued to enjoy the benefits of the agreement and therefore did not effectively disaffirm."); *see also C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 Fed. App'x 488, 489 (9th Cir. 2015) ("By continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract").[5]

#### 4. <u>Equitable Estoppel Independently Requires Enforcement of the Arbitration Agreement</u>

Alternatively, the Court should compel arbitration under the equitable estoppel doctrine because Plaintiff and their Responsible Adult each knowingly sought the benefits made possible by the Terms: access to and use of the Roblox Platform.[6] "Estoppel can bind a non-signatory to an arbitration clause when that non-signatory has reaped the benefits of a contract containing an arbitration clause." *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014) (citation

---

[5] Nonetheless, if for some reason, the Court believes more factual information is required to ascertain whether and to what extent a Responsible Adult accepted the Terms or otherwise ratified Plaintiff's actions, or to confirm any other fact the Court deems material that Plaintiff contests in their opposition, Roblox would request leave to conduct limited discovery to those ends.

[6] *Santiago*, 343 A.3d 995 is wholly inapplicable to this action for the reasons stated above. *See supra* § III.B.2. But even if this Court does follow *Santiago* (it should not), that case does not preclude the application of this doctrine. Equitable estoppel due to the minor's continued use was not discussed in *Santiago* because, there, the minor did not continue to enjoy the benefits of the agreement at issue.

omitted). For several years, Plaintiff and their Responsible Adult have taken advantage of the opportunities provided using Plaintiff's Roblox account and therefore claimed the benefits of the Terms. *See, e.g.*, *HealthplanCRM, LLC v. AvMed, Inc*., 458 F. Supp. 3d 308, 329 (W.D. Pa. 2020) (compelling plaintiffs to arbitration where "non-signatories to a contract [sought] to avoid arbitration clauses after accepting all manner of benefits flowing directly from signatories' performance of that contract"); *see also Angelilli*, 2025 WL 524276, at *12 (holding that minor nonsignatory was "bound to arbitrate because he directly benefitted from the Nintendo Account User Agreement" under Illinois version of equitable estoppel known as "direct benefits estoppel"). The doctrine of equitable estoppel is particularly relevant here, as Roblox's records indicate Plaintiff was still actively using the Roblox Platform at least as of December 30, 2025, and thus continues to benefit from acceptance of the Terms. *See* Jit Decl. ¶ 8.

### C. <u>The Arbitration Agreement Encompasses Plaintiff's Claims</u>

#### 1. <u>The Arbitration Agreement Delegates Threshold Issues of Arbitrability to an Arbitrator</u>

The arbitration provisions in the Terms specify that an arbitrator, not a court, shall decide "all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms." Jit Decl., Ex. 3 at 25; *supra* § II.C. Courts routinely enforce that type of provision. *See Henry Schein*, 586 U.S. at 68; *Pricharda*, 2022 WL 16749033, at *5; *Highmark*, 785 A.2d at 95. Because Plaintiff is subject to the arbitration provision, therefore, all remaining disputes belong before the arbitrator, including "'gateway' questions of 'arbitrability'" like "whether their agreement covers" Plaintiff's claims. *Henry Schein*, 586 U.S. at 68 (citation omitted).

The Terms also incorporate the FedArb rules, Jit Decl., Ex. 3 at 24-25, which similarly dictate that the arbitrator "determine[s] challenges to its jurisdiction," including disputes over an

agreement's "scope or validity." *See* FedArb Rules, Rule 5.02. That alone would compel arbitration of those issues, as courts in this Circuit have repeatedly ruled. *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (holding that the parties clearly and unmistakably delegated arbitrability by incorporating arbitration rules with similar language); *Dobbs v. Health IQ Ins. Servs., Inc.*, No. 21-5276, 2022 WL 2974713, at *5 (E.D. Pa. July 27, 2022) (same).

### 2. <u>The Claims Fall Within the Arbitration Agreement's Broad Scope</u>

Courts "liberally…construe the scope of arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) and should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Arbitration agreements that encompass "all claims arising out of or relating to" a matter are "broad." *Warwick Tp. Water and Sewer Auth. v. Boucher & James, Inc.*, 851 A.2d 953, 958 (Pa. Super. 2004). And courts consistently hold that such clauses encompass contract, statutory, and "tort claims arising from a contractual relationship." *Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 478 (2017) (collecting cases).

The arbitration agreement here encompasses "any dispute, claim, or controversy […] with Roblox arising under or relating in any way to the Roblox Terms or the Services[.]" Jit Decl., Ex. 3 at 19. Plaintiff's claims arise under or relate to the "the Services," because the "Services" expressly include "the Roblox website […] and its related platform […] and various other features and services, including websites, applications, forums, content, functionality, products, and services […] to allow users […] to play, create, and connect." *Id.* at 1. These are precisely the Roblox Services the Complaint alleges Plaintiff used. *See, e.g.,* Compl. ¶ 9 (allegations regarding

Plaintiff's use of Roblox's Platform).

### D. <u>The Court Should Stay This Action And Compel Arbitration</u>

Because each claim in the Complaint is subject to arbitration, the Court should stay this proceeding. When a court determines that all claims raised in an action are subject to arbitration, the FAA "requires a court to stay the proceeding" pending the outcome of the arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Because Plaintiff's claims are all subject to arbitration, *see supra* §§ III.B-C, the Court should stay this action upon referring the dispute to arbitration as required by the FAA. *See* 9 U.S.C. § 3; *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004) (courts are "obligated" under FAA to "stay once [they] decide[] to order arbitration").

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should order Plaintiff to arbitrate their claims and stay this action.

Dated: January 9, 2026

By: /s/ *Jay E. Kagan*
Jay E. Kagan

DILWORTH PAXSON LLP
Jay E. Kagan, Esquire
John J. Higson, Esquire
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel: (215) 575-7000
jkagan@dilworthlaw.com
jhigson@dilworthlaw.com

ORRICK, HERRINGTON & SUTCLIFFE LLP
David P. Fuad (*pro hac vice*)
John P. Badalich (*pro hac vice*)
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071-1596
Tel: (213) 629-2020
dfuad@orrick.com
jbadalich@orrick.com

Behnam Dayanim (*pro hac vice*)
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
Tel: (202) 339-8400
bdayanim@orrick.com

*Attorneys for Defendant*
*Roblox Corporation*