## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

SUSAN FRENCH, as PARENT and NATURAL GUARDIAN of Z.F., a minor.

Plaintiff,

vs.

ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, MOJANG AB and JOHN DOES 1-50

Defendants.

Case No.: 2:25-cv-05306

Hon. Mia Roberts Perez

**MEMORANDUM OF LAW OF PLAINTIFF SUSAN FRENCH, AS PARENT AND NATURAL GUARDIAN OF Z.F., A MINOR IN OPPOSITION TO DEFENDANT EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. FACTUAL BACKGROUND...................................................................................3

III. APPLICABLE LAW ..............................................................................................3

IV. ARGUMENT...........................................................................................................4

    A. Z.F., A MINOR, IS NOT BOUND TO ARBITRATE HIS CLAIMS AGAINST DEFENDANT..........................................................................................................4

        1. Defendant Cannot Identify, Let Alone Sufficiently Prove, Who Agreed to Its EULA.......................................................................................................4

            a. The Uniform Electronic Transactions Act Requires Signature Attribution Before an Electronic Agreement Can Be Deemed Validly Formed. ...................................................................................5

            b. Defendant Has Failed to Provide Adequate Proof that Z.F. Agreed to its EULA. ....................................................................................7

            c. Defendant Has Failed to Provide Any Evidence that Z.F. Ratified Any Contracts in Writing Following His Disaffirmance on September 16, 2025, to Satisfy the Applicable Statute of Frauds. ..9

            d. Discovery Is Required to Ascertain the Defendant's Electronic Transaction and Signature Verification Processes and Procedures. ...............................................................................................10

        2. Even if Z.F. Did Agree to Defendant's EULA, Z.F. Cannot Be Bound by the Arbitration Agreement as a Matter of Law.........................................11

        3. Likewise, Even if Defendant Could Prove that Z.F.'s Parents Agreed to their EULA on Z.F.'s Behalf, Z.F. Cannot Be Bound by the Arbitration Agreement as a Non-Signatory.................................................................12

        4. Z.F. Also Explicitly Disaffirmed Any Agreement with Defendant and Therefore is Not Bound By the EULA. ..............................................14

            a. Z.F.'s Disaffirmance is Properly Before this Court and Not an Issue That Should be Delegated to an Arbitrator. ...................................14

            b. Z.F. Properly Disaffirmed Any Agreement He May Have Had with Defendant by Filing the Complaint................................................14

         5. The Doctrine of Equitable Estoppel Cannot Bind Z.F. to Defendant's EULA, Nor Does it Defeat His Disaffirmance. .........................................15

            a. Z.F. Cannot be Bound to the EULA by Equitable Estoppel Because the Terms Were Unenforceable. ...................................................15

            b. Similarly, Where a Minor Obtains the Full Value of An Agreement, They Are Still Entitled to Disaffirm. ...........................................16

            c. A Minor Cannot Be Bound By Continued Use Until Reaching the Age of Majority...............................................................................17

          6.     The EULA is Also Unconscionable and Therefore Z.F. Cannot Be Bound by Them. ...................................................................................................18

    B.    THE FORUM SELECTION CLAUSE IS INVALID AND THEREFORE TRANSFER TO NORTH CAROLINA IS IMPROPER.....................................18

V.    CONCLUSION.................................................................................................................20

**Cases**

*Apicella v. Valley Forge Military Academy*,
630 F. Supp. 20 (E.D. Pa. 1985) ...................................................................16, 17

*Bensinger's Coex'rs v. West*,
255 S.W.2d 27 (Ky. App. 1953) ......................................................................17, 18

*Brown v. Elk Horn Coal Corp.*,
8 S.W.2d 404 (Ky. 1928) ...................................................................................15

*Byrne v. Simco Sales Service of PA., Inc*,
179 F.Supp. 569 (E.D.Pa. 1960) .........................................................................19

*Century Indem. Co. v. Certain Underwriters at Lloyd's London*,
584 F.3d 513 (3d Cir. 2009) ..................................................................................4

*Damron v. Ratliff*,
97 S.W. 401 (Ky. App. 1906) ...............................................................................17

*Doe v. Mercy Health Corp. of Southeastern Pennsylvania*,
150 F.R.D. 83 (E.D. Pa. 1993) .......................................................................10, 18

*Friedmann v. Jefferson County Board of Ed.*,
647 S.W.3d 181 (Ky. 2022) ...................................................................................6

*Foster v. Chesapeake Ins. Co.*,
933 F.2d 1207 (3d Cir. 1991) ...............................................................................19

*Haines v. Fitzgerald*,
165 A. 52 (Pa. Super. 1933) .................................................................................15

*J.I. Case Threshing Mach. Co. v. Dulworth*,
287 S.W. 994 (Ky. 1925) ......................................................................................17

*John Doe v. Roblox Corp., et al.*,
No. 25-CIV-01193 (Cal. Super. Ct. Aug. 15, 2025) ..............................................6

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009) ...................................................................................3

*Lexington Alzheimer's Invs., LLC v. Norris*,
718 S.W.3d 795 (Ky. 2025) ..................................................................................16

*Mathias v. Caterpillar, Inc.*,
203 F.Supp. 3d 570 (E.D.Pa. 2016) ..................................................................................19

*Miller as Next Friend of E.M. v. House of Boom Kentucky*,
575 S.W.3d 656 (Ky. 2019) ....................................................................................2, 13, 16

*Mitchell By and Through Fee v. Mitchell*,
963 S.W.2d 222 (Ky. App. 1998) ..........................................................................2, 11, 20

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) ..............................................................................................................3, 4

*Murphy v. Roblox Corp.*,
No. 23-CV-1940 TWR (BLM), 2025 WL 2327100 (S.D. Cal. July 9, 2025) ..........................7

*In re O'Leary's Est.*,
352 Pa. 254, 42 A.2d 624 (1945) ........................................................................................2, 11

*Pankas v. Bell*,
198 A.2d 312 (Pa. 1964) ......................................................................................................2

*Polytek Dev. Corp. v. 'Doc' Johnson Enterprises*,
532 F.Supp. 243 (E.D.Pa. 2021) .........................................................................................19

*Santiago v. Philly Trampoline Park, LLC*,
291 A.3d 1213 (Pa. Super. 2023) .......................................................................................2, 11

*Santiago v. Philly Trampoline Park, LLC*,
343 A.3d 995 (Pa. 2025) ......................................................................................................2, 13

*Simmons v. Parkette Nat'l Gymnastic Training Center*,
670 F. Supp. 140 (E.D. Pa. 1987) ......................................................................................11, 16

*Singh v. Uber Technologies Inc.*,
939 F.3d 210 (3d Cir. 2019) ................................................................................................14

*Sovereign Bank, F.S.B. v. Rochester Community Savings Bank*,
907 F.Supp. 123 (E.D.Pa. 1995) .........................................................................................19

*Stanton Health Facilities, LP v. Fletcher*,
454 S.W.3d 312 (Ky. App. 2015) ........................................................................................10

*Trippe Mfg. Co. v. Niles Audio Corp.*,
401 F.3d 529 (3d. Cir. 2005) ..............................................................................................4, 14

*Walker v. Walker*,
69 S.W.2d 716 (Ky. 1934) ....................................................................................................15, 17

*Wilson v. Wilson*,
   65 S.W.2d 694 (Ky. 1933) ..................................................................................13

**Statutes**

73 P.S. § 2260 ................................................................................................................5

73 P.S. § 2260.103 .........................................................................................................5

73 P.S. § 2260.305 .........................................................................................................6

23 Pa.C.S. § 5101(a) .....................................................................................................11

Ky. Rev. Stat. Ann. § 369.102 ......................................................................................5

Ky. Rev. Stat. Ann. § 369.109(1) ..................................................................................6

Ky. Rev. Stat. Ann. § 371.010(2) ............................................................................10, 17

Ky. Rev. Stat. Ann. § 387.010(1) ................................................................................11

# I.    <u>INTRODUCTION</u>[1]

Defendant has designed, manufactured and marketed a video game product that has encouraged, induced and resulted in catastrophic effects on minor children like Z.F. The addictive elements of Defendant's game are so powerful that Z.F. has been consumed to the point where it is impacting every aspect of his life. Now, Defendant attempts to bind Z.F. to a complex contract that it has no idea, let alone proof, whether Z.F., his parents or anyone else reviewed or agreed to, and that Z.F. certainly had no way of understanding as a minor child. In making this argument, Defendant alleges that various actions such as account creation and pop-up notifications bind Z.F. to this contract in its entirety and specifically to its arbitration provision. However, Defendant's arguments fail factually and legally.

As a threshold matter, Defendant cannot prove what specific person they allegedly contracted with. The declaration of David Saunders ("Saunders Declaration") makes this shortcoming abundantly clear, as he cannot attribute any allegedly binding action to Z.F. or his parents. Instead of attributing contract acceptance to any particular person, Mr. Saunders is careful to speak in generalities only about Z.F.'s accounts. This lack of attribution to an individual person is a direct result of Defendant having no mechanism in place to confirm the person behind an account. Defendant's ignorance of this critical element of contract formation is willful and intentional, because including such mechanisms would create friction at sign-up and during gameplay, causing users to avoid using its product. It is also reckless and egregious, given that

---

[1] At the outset, Plaintiff notes that this Court should deny Defendant's Motion in its entirety because Defendant has failed to comply with the Court's unambiguous twenty (20) page briefing limit. (ECF 5) ("All counsel must review Judge Perez's Most Recent Guidelines which are published on the Eastern District of PA's website."). Defendant's brief exceeds this Court's requirement by 5 pages, and Plaintiff is unaware of Defendant requesting a page extension. To comply with this Court's rules, Plaintiff's brief was necessarily more limited than the Defendant's Motion. Plaintiff will be severely prejudiced if Defendant is allowed such a significant page advantage in which to make additional substantive arguments that cannot be adequately rebutted.

Defendant has painstakingly studied and researched its user base, which is almost exclusively comprised of minor children. As Defendant cannot directly link Z.F. or his parents to any particular action that Defendant alleges binds Z.F. to arbitrate his claims, Defendant has failed to prove a valid contract ever existed in the first instance, which is a prerequisite to its Motion.

Secondly, as a minor child, Z.F., cannot be bound by the arbitration clause contained in Defendant's End User License Agreement ("EULA") under any circumstances as a matter of law. Courts have historically been ultraprotective of children in the context of contract creation and enforcement. This is because "**minors lack the capacity to agree to an arbitration agreement or any other contract in their own right**." *Santiago v. Philly Trampoline Park, LLC*, 291 A.3d 1213, 1224 (Pa. Super. 2023) (emphasis added); *see also Mitchell By and Through Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. App. 1998) ("Infants, as with other classes of disabilities, are presumed to be insufficiently mature or experienced to effectively bargain with those who have attained legal age."). This general policy is to protect minors "against their own lack of discretion and against the snares of designing persons." *Pankas v. Bell*, 198 A.2d 312, 315 (Pa. 1964) (citing *O'Leary's Estate*, 42 A.2d 624, 625 (Pa. 1945)). As Z.F. is a minor, Z.F. cannot be bound to a complex arbitration agreement, regardless of whether he allegedly agreed to Defendant's EULA.

Thirdly, Z.F. cannot be bound by his parents' agreement, if any, to arbitration as a non-signatory. *Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995, 1015 (Pa. 2025); *Miller as Next Friend of E.M. v. House of Boom Kentucky*, 575 S.W.3d 656, 660 (Ky. 2019) ("[P]arents have no right to enter into contracts on behalf of their children absent special circumstances."). Precedent precludes a parent from binding a minor child to arbitration or, for that matter, any contract provision, without adequate court supervision and approval. Simply put, regardless of any action Z.F.'s parents may have taken, they could not bind Z.F. to arbitration as a matter of law.

2

Fourthly, even if this Court finds a valid contract was formed, and that arbitration can be applied to Z.F. as a minor child, Z.F. expressly disaffirmed any agreement with the filing of the Complaint. By disaffirming any agreement Z.F. may have had with Defendant, he is no longer bound by any of the Defendant's EULA, including any purported requirement to arbitrate his claims. What is more, the doctrine of equitable estoppel cannot bind him to the EULA, including the arbitration provision, pursuant to applicable law and the statute of frauds.

Fifthly, Z.F. cannot be bound by a forum selection clause in Defendant's EULA under applicable law for the same reason it cannot compel arbitration: Defendant cannot adequately demonstrate a validly formed contract that binds Z.F.

For these reasons, and the additional detail provided below, Defendant's Motion should be denied in its entirety.

## II. FACTUAL BACKGROUND

Now, Defendant attempts to avoid having this Court decide its liability to Z.F. by compelling arbitration. But the EULA that Defendant alleges binds Z.F. to arbitrate his claims are incredibly complex, and the linguistic demands alone exceed the working memory and comprehension of a 16-year-old, much less a child who started playing at 3. *See* Declaration of Dr. Dennis McBride ("McBride Decl."), ¶ 21,22, attached as **Exhibit A**. This reality is critical to understanding the issues and applicable law presently before this Court, and a reason why it should ultimately deny Defendant's Motion.

## III. APPLICABLE LAW

Although arbitration is generally favored, the presumption in support of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). In fact, "arbitration agreements are as enforceable as other contracts, but not more so." *Morgan v.*

3

*Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12 (1967). Accordingly, "a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." *Morgan,* 596 U.S. at 418 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218-221 (1985). Before compelling arbitration, a court must first determine whether: (1) a valid agreement to arbitrate exists; and (2) the dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d. Cir. 2005). Certainly, "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009).

Notably, Defendant fails to address whether a conflict of law exists between the law of the forum – Pennsylvania – and the law of Z.F.'s state of residence – Kentucky, proceeding directly to apply Kentucky and North Carolina law[2]. Importantly, no conflict exists between the law of Pennsylvania and Kentucky because Z.F. is not bound to arbitrate his claims under either state's laws for virtually identical reasons. However, if the Court deems that a conflict does exist in the absence of Defendant raising and briefing the issue in their Motion, Plaintiff requests the opportunity to more fully brief the question.

## IV. <u>ARGUMENT</u>

### A. <u>Z.F., A MINOR, IS NOT BOUND TO ARBITRATE HIS CLAIMS AGAINST DEFENDANT.</u>

#### 1. <u>Defendant Cannot Identify, Let Alone Sufficiently Prove, Who Agreed to Its EULA.</u>

Defendant has failed to provide **any** adequate evidence that Z.F., his parents, or any other specific person, for that matter, agreed to its EULA. This is readily apparent from the declaration

---

[2] The EULA's choice-of-law provision is unenforceable for the same reasons as the EULA as a whole, therefore North Carolina law is inapplicable.

of David Saunders ("Saunders Declaration") which fails to attribute **any** actions directly to a particular person, much less Z.F. or his parents. Instead, Saunders speaks generally, but deliberately, only about "Z.F. Account #1," "Z.F. Account #2" and Z.F. Account #3 taking certain actions which Defendant alleges bind Z.F. to arbitration. *See* Declaration of Keneth J. Moyle, Jr. ("Moyle Decl.") ¶ 19, attached as **Exhibit B.** Despite assuming this critical fact to make out a claim for arbitration, at no point in Saunders's Declaration does he identify how the Defendant identifies or verifies the individual to whom the EULA is presented and accepts the same. *Id*. ¶¶ 22-24, 30-31. In fact, to identify the accepting counterparty, Defendant would have needed mechanisms in place for identity verification at the time it alleges Z.F. supposedly assented to its EULA. *Id*. ¶¶ 22-24. Yet, Defendant completely fails to identify any such mechanism in its brief or supporting declaration, thus reflecting that the opposite is true – sufficient information, documentation or evidence identifying and verifying the supposed counterparty to the EULA simply does not exist in a manner that would allow this Court to find a valid contract exists.

          **a. The Uniform Electronic Transactions Act Requires Signature Attribution Before an Electronic Agreement Can Be Deemed Validly Formed.**

Pennsylvania and Kentucky have both adopted the Uniform Electronic Transactions Act ("UETA"). *See* 73 P.S. § 2260*;* Ky. Rev. Stat. Ann. §. 369.101. An electronic contract ("e-contract") is defined as any "record created, generated, sent, communicated or received by stored electronic means." *See* 73 P.S. § 2260.103; Ky. Rev. Stat. Ann. § 369.102. The statutes further states an electronic signature encompasses "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id*. "An electronic record or signature is attributable to a person **if it was the act of <u>that person</u>**. The act of the person may be shown in any manner, including a showing of efficacy of any security procedures applied to determine the person to which the electronic record or electronic

signature was attributable." 73 P.S. § 2260.305 (emphasis added); Ky. Rev. Stat. Ann. § 369.109(1). In its adoption of the UETA, the Kentucky legislature did not specifically comment on the importance of proof in the context of the "anonymous click-through process"; however, Pennsylvania provides important insight on this question by noting that issues of proof are paramount. 73 P.S. § 2260.305 at cmmt. 5 (emphasis added). Moreover, courts "are commanded to construe the UETA in a manner that would "facilitate electronic transactions consistent with other applicable law."" *Friedmann v. Jefferson County Board of Ed.*, 647 S.W.3d 181, 188 (Ky. 2022).

Further, under *Friedman*, "[a]n electronic signature is not legally valid when it is not made by the action of the person the signature purports to represent" as "electronic signatures are readily subject to fraud, and it is not common enough for websites such as retailers, social media, or governments, to ensure a user interacting with their website, making a picture, or giving an electronic signature is in fact a human who is who he says he is." *Friedmann*, 647 S.W.3d at 189-90. Like Pennsylvania, Kentucky courts have declined to attribute signatures to individuals even when a person purportedly signing an electronic petition provided their name, address, social security number and birth month as, "[i]n an electronic environment where generic information such as this is discoverable, such information, alone, is insufficient to establish attribution." *Id*. at 190. Consequently, failing to employ a secure procedure to confirm identify renders such signatures invalid under Ky. Rev. Stat. Ann. § 369.109(1). *Id*. at 192.

Indeed, courts in other jurisdictions facing nearly identical circumstances have denied motions to compel arbitration where corporate entities fail to provide evidence of contract formation when a click-through process is at issue. *See* Minute Order on Motion to Compel Arbitration, *John Doe v. Roblox Corp., et al.*, No. 25-CIV-01193, at *4 (Cal. Super. Ct. Aug. 15,

2025), attached as **Exhibit C** ("If Discord wants to use this 'click through' format without any additional verification related to exactly who is controlling the process on the customer's end, then they do so at their own peril.")[3]; *Murphy v. Roblox Corp.*, No. 23-CV-1940 TWR (BLM), 2025 WL 2327100 (S.D. Cal. July 9, 2025), attached as **Exhibit D** ("Because [Roblox] fails to establish by a preponderance of the evidence that Plaintiff assented to its arbitration provision, the Court [denies] Defendant's Motion")[4]. Very simply, courts require a corporate entity to actually prove who clicked the button agreeing to a contract or terms of use before enforcing arbitration.

### b. Defendant Has Failed to Provide Adequate Proof that Z.F. Agreed to its EULA.

Defendant asserts that Z.F. agreed to arbitrate claims against Defendant but fails to provide any evidence in support. Moyle Decl. ¶¶ 30-31. Defendant asserts that Z.F. is bound to arbitration because he "must have" assented to its EULA: (1) during account creation; and (2) during usage of the platform where "pop-ups" were presented. However, as is plain on the face of the Saunders Declaration, Defendant does not know who specifically performed any of these actions such that a contract was validly formed with that particular individual. *Id*. ¶¶ 16-18, 22-24.

First, the careful language used throughout the Saunders Declaration indicates that Defendant cannot directly link Z.F. to the actions it alleges bind Z.F. to arbitration. Specifically, the Saunders Declaration uses the phrase the "**user** of Z.F. Account #1 accepted" or the "**user** of

---

[3] "Discord has not shown with sufficient specificity exactly who agreed with Discord's Terms and how. The parties seem to (at least tacitly) agree that a Discord account was formed in 2023, by virtue of <u>someone</u> clicking through Discord's online Terms to open the account. But that is where the parties diverge, and the evidence Discord offers relating to the account in question is minimal to none. **The burden is on Discord to establish exactly who its contract is with if Discord wishes to enforce the arbitration provision therein. Discord has not met that burden at this point in time, and by failing to do so, there is no basis upon which to grant the motion at this time.**" **Exhibit C** at *3-4 (emphasis added).

[4] "While it is possible that Plaintiff created the account, it is equally possible that his child, the child's mother, another child, or some other person entirely created the account after obtaining Plaintiff's permission." **Exhibit D** at *14, n. 5.

Z.F. Account #2 accepted" or the "**user** of Z.F. Account #3 accepted" when referring to each of the instances Defendant alleges Z.F. bound himself to the EULA. In fact, sections of the Saunders Declaration are titled "**The *User* of Z.F. Account #1 Agreed to the EULA Five Times**," "**The *User* of Z.F. Account #2 Agreed to the EULA Four Times**" and "**The *User* of Z.F. Account #3 Accepted the EULA Four Times**." This is in stark contrast to Section A.2 of Defendant's brief which is titled "***Z.F.* Agreed to the EULA Thirteen Times**." Despite the arguments in its brief, in reality, Mr. Saunders cannot, and does not, state anywhere in his Declaration, under penalty of perjury, that Z.F. was the actual person who took the actions Defendant alleges bind Z.F. to arbitration. *Id*. ¶ 21. That is because Defendant would have had to verify the specific user or person responsible for each action allegedly demonstrating assent, but completely failed to do so.

Second, Mr. Saunders goes on to describe the actions that allegedly bind Z.F. to arbitration. He states that when someone creates an account, that unknown person must agree to Defendant's EULA during the sign-up process. At sign-up, the unknown user is required to submit a name, email address, password, age and in-game display name. According to Mr. Saunders, the unknown user of Z.F. Account #1 provided a date of birth under the age of 18, while the user of Z.F. Account #2 and Z.F. Account #3 identified they were over the age of 18 ("Z.F. Accounts"). Based on the information submitted, it is unclear how Defendant can allege Z.F. assented to its EULA when he is currently only 16 years old. *See* Compl. ¶ 13. More importantly, Defendant's evidence demonstrates it has no way of knowing who was actually operating the controls and in front of the screen at the time EULA was purportedly presented. Although a user is required to click "accept" when the EULA is purportedly presented during enrollment, Defendant does not in any way show how that action or subsequent actions identify and verify who that "user" is. All told, Defendant

completely fails to establish who it supposedly contracted with, the legal relationship that unknown person may or may not have had with Z.F. and the process whereby the EULA were adopted such that this Court has sufficient basis to find the threshold element of valid contract formation has been satisfied. *Id*. ¶¶ 30-31.

Beyond the initial creation of its alleged electronic contract, Defendant alleges Z.F. agreed to the EULA ten more times under the Z.F. Accounts. Defendant's EULA advises any amendments would be posted on its website or available "when you[5] next access the software." Defendant alleges that these "pop-ups" would have been displayed to "The User" of the Z.F. Accounts during gameplay, but again, Defendant fails to identify how it documents and verifies the actual person who is using the account at the time a "pop-up" notice appears. *Id*. ¶¶ 22-24. Instead, the Saunders Declaration demonstrates only that Defendant blindly transmits the "pop-up" without any regard for who is on the receiving end, much less whether they are anyone with an adequate legal basis to bind Z.F. It is simply inconceivable that such a haphazard process can function to strip Z.F. of his constitutionally protected right of access to the courts.

        **c.   Defendant Has Failed to Provide Any Evidence that Z.F. Ratified Any Contracts in Writing Following His Disaffirmance on September 16, 2025, to Satisfy the Applicable Statute of Frauds.**

Defendant has failed to provide any evidence that Z.F. ratified any contracts in writing following his disaffirmance by filing the Complaint on September 16, 2025. Under Kentucky law[6], the statute of frauds requires that any ratification of a contract made during infancy cannot be made

---

[5] Tellingly, the Saunders Declaration does not state who "you" is. Is it Z.F.? His parents? A sibling or cousin? A friend? Incapable of answering this question, Defendant hopes the Court will simply assume without basis that the "you" and "user" Mr. Saunders references throughout are Z.F.

[6] Once again, Plaintiff submits that Pennsylvania law applies in the absence of a true conflict with Kentucky law; however, where Defendant argues Kentucky law applies, they cannot escape the application of the statute of frauds under that state's law.

merely by performance, but instead must be in writing and signed by the ratifying party for it to be legally enforceable. Ky. Rev. Stat. Ann. § 371.010(2). If Z.F. was bound by an agreement prior to his disaffirmance, the effect of his disaffirmance invalidated any contract at that time and, as such, for Z.F. to ratify the contract or give it new life following disaffirmance, he would have had to expressly agree in writing to satisfy the statute of frauds.

Not surprisingly, Defendant will argue that an October 17, 2025 "pop-up" notification after Z.F.'s disaffirmance satisfies the written ratification requirement of the Kentucky statute of frauds. However, as discussed at length above, Defendant again has not provided any evidence that the person behind the screen was Z.F., his parent, or someone else. Moreover, it cannot be credibly argued that simply using Defendant's services is sufficient written ratification. As a result, Defendant cannot say that Z.F. or his parents ever ratified the EULA at any time following the filing of his Complaints, and certainly not in any way that satisfies the statute of frauds.

> **d. Discovery Is Required to Ascertain the Defendant's Electronic Transaction and Signature Verification Processes and Procedures.**

Defendant's complete failure to submit sufficient evidence demonstrating a validly formed contract is reason alone to deny the Motion in its entirety. *See* **Exhibits C** and **D**. Even still, if the Court is inclined to consider arbitration, Defendant's inability to state or prove who took the actions that supposedly bind Z.F. to arbitration warrants meaningful discovery on these issues, especially as it relates to the full extent of Defendant's electronic transaction verification processes and procedures. *See Doe v. Mercy Health Corp. of Southeastern Pennsylvania*, 150 F.R.D. 83 (E.D. Pa. 1993) (Court may permit additional discovery where a party demonstrates additional discovery will enable him to rebut the motion) *see also Stanton Health Facilities, LP v. Fletcher*, 454 S.W.3d 312, 315 (Ky. App. 2015) (Court may order limited discovery on the issue of arbitrability). As demonstrated by the foregoing discussion and comparative dearth of such information in Mr.

Saunders's Declaration, this evidence is crucial to evaluating the electronic transactions at issue to determine whether the threshold element of a validly formed contract to arbitrate ever existed. Moyle Decl. ¶ 22-24.

### 2. Even if Z.F. Did Agree to Defendant's EULA, Z.F. Cannot Be Bound by the Arbitration Agreement as a Matter of Law.

Z.F., as a minor, cannot be bound by an arbitration agreement – or, for that matter, any contract – he purportedly agreed to absent court supervision and approval under both Pennsylvania and Kentucky law. Unable to escape this reality, Defendant fails to cite **a single** Kentucky or Pennsylvania case where a minor personally bound themselves to arbitration and the contract was enforced. This is because, in both jurisdictions, "**minors lack the capacity to agree to an arbitration agreement <u>or any other contract</u> in their own right**." *Santiago*, 291 A.3d at 1213 (emphasis added); *see also* 23 Pa.C.S. § 5101(a) (Only individuals 18 years of age or older have the right to enter into a binding and legally enforceable contract); Ky. Rev. Stat. Ann. § 387.010(1) (a minor is "any person who has not reached the age of eighteen (18)); *Mitchell By and Through Fee*, 963 S.W.2d at 223 ("Infants, as with other classes of disabilities, are presumed to be insufficiently mature or experienced to effectively bargain with those who have attained legal age.").

In both states, minors can only be bound to contracts for necessities. *In re O'Leary's Est.*, 42 A.2d 624, 625 (1945) (holding that minors are incompetent to contract except for necessities such as food and clothing); *Mitchell*, 963 S.W.2d at 224 n. 1 (citing *Williams v. Buckler*, 264 S.W.2d 279, 280 (Ky. App. 1954)) ("A minor may be obligated to contracts that provide for necessities of life."). Thus, where a minor executes any contract, including a contract to arbitrate, the agreement is simply not valid. *Simmons v. Parkette Nat'l Gymnastic Training Center*, 670 F. Supp. 140, 142 (E.D. Pa. 1987); *see also* Restatement (Second) of Contracts § 14 ("Unless a statute provides

11

otherwise, a natural person has the capacity to incur only voidable contractual duties until the beginning of the day before the person's eighteenth birthday.").

> **The privilege bestowed upon a minor to avoid contracts made during infancy is given for policy reasons**. Infants, as with other classes of disabilities, are **presumed to be insufficiently mature or experienced to effectively bargain with those who have attained legal age, and any transaction which may result in a financial loss to them or in a depletion of their estates is scrutinized with care**.

*Mitchell By & Through Fee v. Mitchell*, 963 S.W.2d 222, 223 (Ky. App. 1998) (citing *Davis' Committee v. Loney,* 162 S.W.2d 189 (Ky. 1942)) (emphasis added).

Here, Defendant manufactured, designed and marketed a video game product that is intended to addict young children. Now, after knowingly addicting him to the game, Defendant alleges several actions Z.F. (or someone else) may have taken bind him to arbitration. Even if Z.F. did take these actions, Z.F. lacks the capacity to enter into any valid agreement with the Defendant, much less an arbitration agreement. In fact, Defendant's EULA is precisely the type of situation that courts vigilantly try to guard against by protecting minors from the "snares of designing persons" by requiring virtually all contracts involving minors to follow a court-approved and supervised process. As a result, even if Defendant could prove (which it cannot) that Z.F. did personally take the actions of assent Defendant describes, he still cannot be bound to arbitration under fundamental law applicable to all contracts involving minors, including arbitration[7].

> **3. Likewise, Even if Defendant Could Prove that Z.F.'s Parents Agreed to their EULA on Z.F.'s Behalf, Z.F. Cannot Be Bound by the Arbitration Agreement as a Non-Signatory.[8]**

---

[7] Defendant's inclusion of an opt-out provision in its EULA does nothing to support enforcement of the arbitration provision because Defendant's alleged contract with Z.F. was invalid and unenforceable from its inception. The fact that Defendant included in opt-out provision in the EULA does not change the fact that Z.F. is a minor, and therefore any purported contract Defendant had with Z.F. was not properly formed in the first instance.

[8] For the avoidance of doubt, applicable law in Pennsylvania and Kentucky preventing a parent from

In their protection of minor children from unknowingly contracting away their legal rights, courts in Pennsylvania and Kentucky extend this protection even further by holding that a minor like Z.F. cannot even be bound by his parents' agreement to arbitrate his claims. *Santiago*, 343 A.3d at 1015; *see also Miller as Next Friend of E.M. v. House of Boom Kentucky*, 575 S.W.3d 656, 660 (Ky. 2019) ("[P]arents have no right to enter into contracts on behalf of their children absent special circumstances.") (citations omitted). Minors are afforded even greater protection where a fundamental right is directly at issue. *See Wilson v. Wilson*, 65 S.W.2d 694, 695 (Ky. 1933) ("[W]hile the mother might enter into a contract regarding her rights, she could not contract away the rights of her unborn child."); *Miller*, 575 S.W.3d at 661 (citing *Metzger Bros. v. Watson's Guardian*, 65 S.W.2d 460, 462 (Ky. 1933) ("[E]ven when acting as next friend, a minor's parent has no right to compromise or settle a minor's claim without court approval or collect the proceeds of a minor's claim."); *Miller*, 575 S.W.3d at 660 (citing *Scott v. Montgomery Traders Bank & Trust Co.*, 956 S.W.2d 902, 904) ("[P]arents have no authority to enter into contracts on behalf of their child when dealing with a child's property rights, prior to being appointed guardian by a district court.").

Knowing that it cannot cite any Kentucky or Pennsylvania case to support its ends, Defendant fails to cite any case in its Motion where a minor, like Z.F., is bound by his parent's signature. This is telling and should be a direct signal to the Court that this argument has no merit under either Pennsylvania or Kentucky law. Put another way, even where Defendant alleges that Z.F.'s parents may (or may not) have taken actions on Z.F.'s behalf that bind Z.F. to arbitration, the law is clear that Z.F.'s parents were legally incapable of doing so under general contracting

---

binding their child to a contract, including one for arbitration, applies equally to the question of whether the child is an intended third-party beneficiary who can be compelled to arbitrate as a non-signatory to the same contract. The same applies to any agency arguments.

principles in both Pennsylvania and Kentucky. Consequently, even if Z.F.'s parents performed all the actions Defendant alleges in their Motion without sufficient evidence, they still cannot bind Z.F. to arbitration as a matter of law.

**4. <u>Z.F. Also Explicitly Disaffirmed Any Agreement with Defendant and Therefore is Not Bound By the EULA.</u>**

**a. Z.F.'s Disaffirmance is Properly Before this Court and Not an Issue That Should be Delegated to an Arbitrator.**

Separate from the question of whether Defendant's Motion presents a validly formed contract that permits arbitration of minor claims, this Court also has proper authority to evaluate Z.F.'s disaffirmance of Defendant's EULA because Z.F. has challenged the validity of the entire EULA, which necessarily includes the validity of the included delegation clause.

As a preliminary matter, where a delegation clause is included in a contract, courts cannot decide threshold questions of arbitrability "unless a party challenge[s] the delegation clause [specifically] and the court concludes that the delegation clause is not enforceable." *Singh v. Uber Technologies Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (citing *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018)). At the same time, however, courts have viewed delegation clauses as "merely a specialized type of arbitration agreement." *Singh*, 939 F.3d at 215 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)). It therefore follows that if a plaintiff challenges the validity or existence of the alleged contract in its entirety, any clause within that contract delegating a dispute to an arbitrator would be little more than an end-run around the threshold requirement that the trial court decide whether a contract to arbitrate ever existed in the first instance. *Trippe Mfg. Co.*, 401 F.3d at 532 (a court must first determine whether a valid agreement to arbitrate exists before compelling arbitration).

**b. Z.F. Properly Disaffirmed Any Agreement He May Have Had with Defendant by Filing the Complaint.**

14

Under well settled Pennsylvania and Kentucky law, Z.F. properly disaffirmed any agreement he may have had with Defendant by filing a Complaint. *See Haines v. Fitzgerald*, 165 A. 52, 55 (Pa. Super. 1933) (noting that filing a lawsuit constitutes disaffirmance); *see also Brown v. Elk Horn Coal Corp.*, 8 S.W.2d 404, 406 (Ky. 1928) ("[T]here are various ways in which an infant may disaffirm [her agreement] among which is bringing of a suit to cancel or rescind it."). In fact, a minor child can disaffirm a contract even before they turn 18 simply by filing a complaint at law; no additional step or action is needed. *See Brown*, 8 S.W.2d at 406; *Walker v. Walker*, 69 S.W.2d 716, 717 (Ky. 1934) (citation omitted). Here, the filing of Z.F.'s complaint on September 16, 2025 was therefore proper disaffirmance of the EULA and, as such, the effect of any agreement is no longer in force as it relates to Z.F.

**5. <u>The Doctrine of Equitable Estoppel Cannot Bind Z.F. to Defendant's EULA, Nor Does it Defeat His Disaffirmance[9].</u>**

**a. Z.F. Cannot be Bound to the EULA by Equitable Estoppel Because the Terms Were Unenforceable.**

Even if Z.F. continues to play Defendant's video game product, equitable estoppel does not apply because Z.F. was never bound by the agreement in the first place. As discussed *supra*, Z.F. cannot be bound by the arbitration agreement as a signor or non-signatory given that they were a minor. Again, Defendant fails to cite **a single** case applying Kentucky or Pennsylvania law where a court bound a minor to arbitration under the equitable estoppel doctrine, because both jurisdictions in fact preclude it.

To reiterate, Z.F. could never bind himself to the EULA, including arbitration, and neither could his parents. While equitable estoppel was not expressly discussed in *Santiago*, the decision is clear that applying equitable estoppel to nevertheless bind a minor to a contract they could never

---

[9] The statute of frauds precludes minor ratification of a contract by anything other than a writing. Ky. Rev. Stat. Ann. § 371.010(2).

have agreed to without court oversight and approval would subvert well settled law and public policy. This conclusion is consistent with the decisions of other Pennsylvania and Kentucky courts that have implicitly rejected the application of equitable estoppel to contracts involving minors and people with diminished capacity even where the minor realized the full benefit of the alleged bargain to the detriment of the party seeking enforcement of the contract. *See, e.g.*, *Simmons by Grenell*, 670 F. Supp. at 144; *Apicella v. Valley Forge Military Academy*, 630 F. Supp. 20, 24 (E.D. Pa. 1985); *see also Lexington Alzheimer's Invs., LLC v. Norris*, 718 S.W.3d 795, 804 (Ky. 2025) (holding that a wife could not bind her husband to a contract to arbitrate where he lacked capacity to contract given his medical condition).

Simply put, according to longstanding law applied in state and federal courts alike, a minor who obtains the full value of a contract is nevertheless not bound by an invalidly formed agreement.

### b. Similarly, Where a Minor Obtains the Full Value of An Agreement, They Are Still Entitled to Disaffirm.

Courts have likewise held that even where a minor plaintiff receives the full value of their supposed agreements, they are nevertheless entitled to avoid performance of the contract by virtue of their immaturity. *See Miller as Next Friend of E.M. v. House of Boom Kentucky, LLC*, 575 S.W.3d 656, 656 (Holding that pre-injury exculpatory waivers are not enforceable against minor children); *Simmons by Grenell*, 670 F. Supp. at 143 (holding that a minor's parents could not release a defendant from potential claims that eventually accrued to a minor); *Apicella*, 630 F. Supp. at 23. ("under Pennsylvania law, parents do not possess the authority to release the claims or potential claims of a minor child merely because of the parental relationship.").

These decisions show that the law affords minors broad latitude when it comes to disaffirming a contract, and Z.F. should be afforded that same latitude here, given his status as a

minor.  Defendant's lone recourse is to close the account Z.F. used to prevent further use of its product, which it has the ultimate and unfettered power to do; not to have this Court retroactively craft an arbitration remedy.

### c. A Minor Cannot Be Bound By Continued Use Until Reaching the Age of Majority

While the Kentucky statute of frauds itself makes clear that continuous use cannot bind a minor to a contract, Kentucky case law has never recognized it.  This makes sense, of course, because doing so would be in direct conflict with the explicit language of § 371.010(2). Kentucky courts have only deployed the continued use doctrine in the context of adults affirming or disaffirming contracts entered into when they are minor children. See *Damron v. Ratliff*, 97 S.W. 401, 402 (Ky. App. 1906) (a conveyance of an infant may be ratified on his attaining his majority) (emphasis added); *J.I. Case Threshing Mach. Co. v. Dulworth*, 287 S.W. 994, 996 (Ky. 1925) (infant's contract may be ratified by him on attaining his majority).

Disaffirmance is borne out of jurisprudence involving land and employment disputes whereby actual harm would result, if land ownership was failed to be established. Thus, there is some tangible loss identifiable by the party seeking to enforce the contract. This framing led courts to hold "[a]n infant may avoid his contract prior to his majority or within a reasonable time thereafter, but he must, if he elects avoidance, return the consideration received, if within his power to do so." *Walker v. Walker*, 69 S.W.2d 716 (Ky. App. 1934). However, the return of consideration is not an absolute condition precedent for valid disaffirmance. *Id.* (citing *Moore v. Baker*, 92 Ky. 518; *Napier v. Chappell*, 62 S.W. 21, 22). Courts have held that if an infant "has wasted or spent the sum received and is unable to make restitution, his right to repudiate the agreement is not destroyed." *Bensinger's Coex'rs v. West*, 255 S.W.2d 27, 29 (Ky. App. 1953) (citations omitted) (emphasis added). Allowing minor disaffirmance has been extended to situations, like the one

17

before the court, where the consideration received has no value to the adult contracting party. *See id*. at 29 ("It would be futile to require the return of a contract which was unenforceable in so far as the Bensingers were concerned. To them, it had no more value than a blank sheet of paper if the infant chose to avoid it.").

The situation here is far different than a property or employment dispute. In the instance here, Defendant is arguing that Z.F. failed to stop playing its video game after disaffirming. It argues that by failing to do so, Z.F.'s right to disaffirm a contract is stripped away. However, Defendant intentionally manufactured a video game that did what it was designed to do, addict minor children like Z.F. It is inexplicable that after obtaining its objective, and thereby addicting Z.F. to its game, Defendant attempts to bind Z.F. to arbitration when he has no ability to halt his gameplay.

6. **The EULA is Also Unconscionable and Therefore Z.F. Cannot Be Bound by Them.**

The purported presentation of the EULA to Z.F. (or someone else, for that matter), and the EULA itself, are also legally and factually unconscionable such that arbitration cannot be compelled. However, because of the way Defendant selectively presented only portions of the EULA and enrollment process in its self-serving declarations, Plaintiff does not have adequate information or discovery to fully brief this argument on this record. McBride Decl. ¶ 13. As a result, if the Court is inclined to consider sending this matter to arbitration notwithstanding the foregoing arguments, discovery is necessary to fully consider the unconscionability of the EULA. *Id*; *see also Doe*, 150 F.R.D. 83.

B. **THE FORUM SELECTION CLAUSE IS INVALID AND THEREFORE TRANSFER TO NORTH CAROLINA IS IMPROPER**

This case is properly venued in the Eastern District of Pennsylvania as Epic's forum selection clause is part of an invalidly formed and unenforceable contract. "Plaintiff's choice of

forum is a paramount consideration which should not be lightly disturbed." *Sovereign Bank, F.S.B. v. Rochester Community Savings Bank*, 907 F. Supp. 123 (E.D. Pa. 1995). As discussed at length above,[10] where the entire EULA is invalid and unenforceable at the outset, the forum selection clause likewise fails to bind Z.F. in any way that would support Defendant's argument to transfer venue from the Eastern District of Pennsylvania.

Furthermore, courts in this District apply a two-part analysis to determine whether a forum selection clause is enforceable. *Mathias v. Caterpillar, Inc.*, 203 F. Supp. 3d 570, 575 (E.D. Pa. 2016). First, the court must determine whether the clause is valid and enforceable. *Id*. If the court determines the forum selection clause is enforceable, the court then evaluates whether, pursuant to Section 1404(a), extraordinary circumstances militate against enforcing the forum selection clause. *Id*. (citing *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)). To establish a forum selection clause is invalid, a resisting party needs to show enforcement is "unreasonable" under the circumstances. *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (citation omitted). To show enforcement is unreasonable, a resisting party must demonstrate: (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would…result in jurisdiction so seriously inconvenient as to be unreasonable. *Polytek Dev. Corp. v. 'Doc' Johnson Enterprises*, 532 F. Supp. 3d 243, 248 (E.D. Pa. 2021) (citation omitted).

To reiterate, "Pennsylvania public policy calls for protection of minors by denying enforcement of their contracts, other than necessities." *Byrne v. Simco Sales Service of Pa., Inc.*, 179 F. Supp. 569, 570 (E.D. Pa. 1960) (citing *In re O'Leary's Estate*, 42 A.2d 624, 625 (Pa. 1945));

---

[10] For the sake of brevity, Plaintiff does not restate all of her arguments that the EULA, which includes the forum selection clause, was never properly formed under Pennsylvania law; however, the same are incorporated by reference herein.

*see also Mitchell*, 963 S.W.2d at 224 n. 1 (citing *Williams v. Buckler*, 264 S.W.2d 279, 280 (Ky. App. 1954)) ("A minor may be obligated to contracts that provide for necessities of life."). As such, it would be antithetical to the public policy of Pennsylvania to bind a minor to a forum selection clause in a contract they could not even be bound by in the first place. Defendant fails to cite a single Pennsylvania case where a minor was bound to a forum selection clause in a contract. Instead, Defendant argues, in essence, that it is the public policy of Pennsylvania to enforce forum selection clauses generally. But this axiom simply cannot be true as it relates to minors where more than 80 years of Pennsylvania law has consistently held that minors cannot be bound to contracts absent the protections of court supervision and approval. Consequently, any transfer of this action to North Carolina that relies on the EULA would be improper because it would bind a minor child to a portion of a contract that Pennsylvania law would otherwise prevent from being formed in the first place.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motion to Compel Arbitration and to Stay, or in the Alternative, to Transfer Venue.

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

*/s/ Adam J. Gomez*
Adam J. Gomez (PA Bar # 317145)
Tudor I. Farcas (PA Bar # 316541)
Garrett A. Gittler (PA Bar # 325915)
123 Justison Street, 6th Floor
Wilmington, DE 19801
Tel: 302-622-7000
agomez@gelaw.com
tfarcas@gelaw.com
ggittler@gelaw.com

*Attorneys for Plaintiff*

Date: March 9, 2026