# EXHIBIT "A"

Docusign Envelope ID: CEB57588-DB41-4D5E-9EAA-BF0C4121144D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

**SUSAN FRENCH, as Parent and Natural Guardian of Z.F., a minor,**

**Plaintiff,**

**vs.**

**ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, MOJANG AB and JOHN DOES 1-50,**

**Defendants.**

**Case No.: 2:25-cv-05306**

**Hon. Mia Roberts Perez**

---

**DECLARATION OF DENNIS K. MCBRIDE, PH.D. IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT EPIC GAMES INC'S MOTION TO COMPEL ARBITRATION**

I Dennis K. McBride declare as follows:

## I.      Background and Expertise

1.      I am over the age of eighteen and competent to make this declaration. I make these statements based on my personal knowledge, professional experience, and review of the materials described below. If called as a witness, I could and would testify competently to these matters.

2.      I am an adjunct professor of Human Factors Engineering at the Florida Institute of Technology and an adjunct professor of Regulatory Science at Georgetown University School of Medicine. My teaching and research address human factors science, human-computer interaction, and regulatory evaluation of technical systems.

3. Over a 45-year career, I have specialized in the effectiveness, safety, and efficiency of human-machine and human-computer interaction, including interface design, training systems, and human systems integration across simple and complex operational environments.

**II. Qualifications**

4. My work has focused on systems that require users to read, comprehend, and act on instructions and disclosures across a wide range of task complexity and across populations ranging from cognitively impaired individuals to highly trained technical operators.

5. I hold an M.S. and Ph.D. in experimental psychology and a post-doctoral M.S. in systems. I served for twenty years as a Naval Aerospace Experimental Psychologist and received multiple professional and government awards in human systems integration and human factors engineering.

6. My academic training included formal study of developmental psychology, including child and adolescent cognitive development and comprehension capacity.

7. I have served at six national-level laboratories as a cognitive psychological scientist designing and evaluating human-system displays and text-based interfaces using recognized professional and government human-factors standards.

8. I previously served as Chief Strategy Officer of Source America supporting the U.S. Department of Justice AbilityOne program, where I oversaw development and evaluation of interactive work systems for individuals with sensory and cognitive disabilities, with emphasis on readability and sequenced instruction execution. Scientific reporting of this work was published in *The Bridge*, the journal of the National Academy of Engineering.

9. I am a Board-Certified Professional Ergonomist and served on the Board of Directors of the certifying body. I have served on national technical panels for the National

2

Academies, U.S. Departments of Defense and Homeland Security, IEEE, and the Human Factors and Ergonomics Society.

### III. Assignment, Methods, and Materials

10. I was asked to evaluate whether Epic Games / Fortnite onboarding and agreement flows support meaningful assent by minor users using established human-factors principles.

11. Methods included structured interface walkthroughs, supervised user-task simulations, standardized readability testing, and sequential-processing and working-memory demand analysis for minors approximately ages 9–16.

12. Supporting readability findings are set forth in Exhibit A. Supporting sequential-processing and working-memory findings are set forth in Exhibit B.

### IV. Scope Limitation

13. I did not have access to the precise historical versions presented to the minor at issue. Analyses used currently available versions, which would be expected, if anything, to reflect clarity improvements. My conclusions therefore represent a best-case comprehension assessment.

### V. COPPA Statutory and Regulatory Context

14. The Children's Online Privacy Protection Act (COPPA) was enacted in 1998 and became effective in 2000, with implementing FTC regulations codified at 16 C.F.R. Part 312 and materially amended in 2013 and again in 2025. COPPA and its rulemakings treat child notice and consent as substantive communication obligations directed at children under age 13 and their parents. References sometimes made to "COPPA 2.0" typically refer to proposed expansions that were not enacted as law. My opinions reference the established COPPA statute and rule framework and its child-comprehension assumptions.

3

## VI. Governing Human-Factors Principles

15.    Human-factors science holds that meaningful assent by children requires language compatible with child reading and cognitive capacity, decision-point salience, and interface structure that supports comprehension rather than reflexive compliance.

## VII. Opinions — Epic / Fortnite Assent Architecture

16.    Epic / Fortnite onboarding commonly requires minors to assent to multiple layered agreements presented in close sequence with limited contextual differentiation.

17.    Developmental and human-factors research shows children cannot reliably distinguish and retain multiple abstract legal documents presented without scaffolding.

18.    Access to gameplay is conditioned on immediate acceptance, creating time pressure that predictably induces compliance behavior rather than reflective assent.

19.    The onboarding flow requires rapid context switching between reward-driven gameplay expectation and dense legal text, combined with multiple assent checkpoints and no child-oriented explanatory support.

20.    When sequential cognitive demands exceed working-memory capacity, minors predictably adopt a submit-through heuristic. This pattern is described in Exhibit B.

21.    Agreement texts are written at reading levels far above the capacity of minors ages 9–16, as demonstrated in Exhibit A.

4

## VIII. Opinion

22.    In my professional opinion, Epic / Fortnite assent architecture produces predictable compliance rather than meaningful assent by minors ages approximately 9–16.

23.    Any assent obtained reflects design-induced compliance, not informed agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: 3/9/2026

DocuSigned by:

*Dennis McBride*
528E399B049C48C...
Dennis K. McBride, Ph.D.

5

Docusign Envelope ID: CEB57588-DB41-4D5E-9EAA-BF0C4121144D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

SUSAN FRENCH, as PARENT and
NATURAL GUARDIAN of Z.F., a minor,

Plaintiff,

vs.

ROBLOX CORPORATION, EPIC GAMES,
INC., MICROSOFT CORPORATION,
MOJANG AB and JOHN DOES 1-50,

Defendants.

Case No.: 2:25-cv-05306

Hon. Mia Roberts Perez

**EXHIBIT A**
**DENNIS K. MCBRIDE, READABILITY AND LINGUISTIC COMPLEXITY ANALYSIS**
**OF ONLINE GAME AGREEMENTS PRESENTED TO MINORS**

### I.      PURPOSE

The purpose of this Exhibit is to evaluate the readability and linguistic complexity of agreements governing online games and services (Roblox, Epic Games/Fortnite, and Microsoft Services Agreement) to determine whether their text is linguistically accessible to minors ages 9–16 consistent with accepted human-factors principles and with child-notice assumptions implicit in the Children's Online Privacy Protection Act (COPPA) framework.

### II.      MATERIALS ANALYZED

The following agreements were analyzed:

- • Roblox Terms of Use
- • Epic Games/Fortnite End User License Agreement

- • Microsoft Services Agreement (MSA)

Docusign Envelope ID: CEB57588-DB41-4D5E-9EAA-BF0C4121144D

Each agreement text governs user registration, account creation, onboarding, and/or continued platform access.

### III. METHODOLOGY

Readability and complexity were evaluated using multiple, community-accepted readability metrics:

- Flesch–Kincaid Grade Level
- Gunning Fog Index
- SMOG Index
- Coleman–Liau Index

These formulas analyze sentence length, word difficulty, syllabic density, and syntactic complexity and are widely used in human-factors, educational psychology, and applied linguistics research.

### IV. RESULTS

Evaluation of the agreement texts yielded the following consistent findings:

1. **Reading Level:** Average reading levels fall within graduate to post-graduate grade levels (approximately grades 16–19+).

2. **Sentence Structure:** Many sentences contain multiple clauses and nested conditionals.

3. **Vocabulary:** There is high prevalence of abstract legal terminology (e.g., *indemnification*, *jurisdiction*, *waiver*).

4. **Length:**

   o Roblox and Epic EULAs: several thousand words.
   o Microsoft Services Agreement: over 15,000 words.

### V. COMPARISON TO CHILD READING CAPACITY

Published educational research robustly indicates that most minors ages 9–13 read at roughly grade 4–7 levels, while 14-16 year olds read at roughly grade 8-10 levels, and have limited exposure to abstract legal vocabulary and conditional

logic. Texts several grade levels above this range exceed typical comprehension capacity and therefore are functionally inaccessible to this population.

## VI.     HUMAN-FACTORS INTERPRETATION

From a human-factors perspective:

- Text several grade levels above the reader's capacity is functionally incomprehensible, not merely difficult to read.
- Exposure to unreadable text does not constitute meaningful notice.
- Linguistic inaccessibility obstructs formation of accurate mental models necessary to understand rights, obligations, and consequences.

## VII.    CONCLUSION

Agreements analyzed in this Exhibit are linguistically inaccessible to minors ages 9–16. Their length, structural complexity, and high reading-level requirements preclude comprehension and therefore fail to satisfy meaningful notice expectations aligned with COPPA's protective intent.

---

**References — Exhibit A (APA Style)**

American Psychological Association. (2020). *Publication Manual of the American Psychological Association* (7th ed.).

Educational Testing Service. (2019). *Report on reading comprehension and literacy benchmarks*. Princeton, NJ: ETS.

National Center for Education Statistics. (2021). *Reading assessment frameworks for grades 4–12*. Washington, DC: U.S. Department of Education.

Docusign Envelope ID: CEB57588-DB41-4D5E-9EAA-BF0C4121144D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

**SUSAN FRENCH, as PARENT and**
**NATURAL GUARDIAN of Z.F., a minor,**

**Plaintiff,**

**vs.**

**ROBLOX CORPORATION, EPIC GAMES,**
**INC., MICROSOFT CORPORATION,**
**MOJANG AB and JOHN DOES 1-50,**

**Defendants.**

**Case No.: 2:25-cv-05306**

**Hon. Mia Roberts Perez**

**EXHIBIT B**
**DENNIS K. MCBRIDE, SEQUENTIAL-PROCESSING AND WORKING-MEMORY**
**DEMAND ANALYSIS OF ONLINE GAME AGREEMENTS**

### I.     PURPOSE

This Exhibit evaluates the sequential-processing and working-memory demands imposed on minors by the procedural obligations embedded in online game agreements and associated onboarding flows. The analysis addresses whether minors ages 9–16 can realistically understand, retain, and execute the obligations imposed by these agreements.

### II.     HUMAN FACTORS FRAMEWORK

The analysis is grounded in generally accepted principles of cognitive psychology and human factors engineering, including:

> Working-memory capacity limitations
> Sequential task execution constraints
> Cognitive load theory
> Developmental limitations in executive functioning

These principles are well established and widely accepted.

## III.     PROCEDURAL TASKS REQUIRED BY AGREEMENTS

The agreements analyzed require users to understand and retain:

Conditional rights and obligations

Multi-step dispute resolution procedures

Temporal sequencing (e.g., notice periods, waiting periods, arbitration initiation)

Contingent decision paths based on future events

These requirements are not presented as guided tasks but are embedded within dense legal prose.

## IV.     DEVELOPMENTAL CAPACITY OF MINORS (AGES 9–16)

Developmental research demonstrates that minors in this age range:

Have limited working-memory capacity

Struggle with nested conditional logic

Cannot reliably retain multi-step procedural instructions over time

Default to heuristic-based decision-making when overloaded

These limitations are well documented and non-controversial.

## V.     INTERFACE-INDUCED SEQUENTIAL FAILURE

When agreement obligations are:

Presented outside the immediate task context

Embedded in lengthy documents

Unaccompanied by scaffolding or just-in-time explanation the predictable outcome is sequential-processing failure. Under such conditions, minors cannot form or retain the procedural models required for meaningful assent.

## VI.     HUMAN FACTORS INTERPRETATION

From a human-factors perspective, assent requires the ability to mentally represent future obligations. When sequential demands exceed capacity, default compliance replaces informed decision-making. Clicking "Accept" under these conditions reflects task clearance, not understanding.

2

Docusign Envelope ID: CEB57588-DB41-4D5E-9EAA-BF0C4121144D

## VII.    CONCLUSION

The agreements analyzed impose sequential and working-memory demands that exceed the cognitive capacity of minors ages 9–16. As a result, no reasonable minor user in this age range could meaningfully understand or assent to the procedural obligations embedded in these agreements. Any assent obtained reflects design-induced compliance, not informed agreement, under COPPA-aligned human-factors principles.